Filed 9/30/24  P. v. Garcia CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RAFAEL ANTONIO GARCIA,<br><br>    Defendant and Appellant. | C098001<br><br>(Super. Ct. No. 15F06936) |

In 2019, a jury found defendant Rafael Antonio Garcia guilty of numerous felonies including kidnapping with the intent to commit rape and rape by force.  The trial court sentenced defendant to an indeterminate term of 25 years to life, plus a determinate term of four years eight months.  Defendant appealed.

In an unpublished opinion, we reversed one of defendant's convictions, vacated the sentence imposed under the One Strike law, and remanded the matter for resentencing.  (*People v. Garcia* (Mar. 4, 2022, C089036) [nonpub. opn.] (*Garcia I*).)  On

remand, the trial court resentenced defendant to an indeterminate term of 15 years to life, and a determinate term of three years.

On appeal, defendant now contends his convictions must be reversed because the trial court "did not properly dispose of the doubt as to his competency prior to trial." Defendant also contends both trial and former appellate counsel were ineffective for failing to raise the issue prior to trial and in *Garcia I, supra*, C089036. We conclude all three of these claims are beyond the scope of this appeal.

Alternatively, defendant contends the resentencing court erred by not ordering a second competency evaluation prior to resentencing. We disagree and will affirm the judgment.

## I. BACKGROUND

### A. *Pre-Trial Competency Hearing*

In 2019, defendant was convicted of crimes against three victims. (See *Garcia I, supra*, C089036.) Prior to trial, defense counsel raised doubt as to defendant's competency. The trial court suspended criminal proceedings and appointed Dr. Jason G. Roof to evaluate defendant's competence.

On June 7, 2016, Dr. Roof issued his report. He noted that defendant stopped school after finishing eleventh grade. Defendant had no recorded history of a learning disability or "developmental abnormalities," but he told Dr. Roof that school was hard for him, and he was held back twice. Dr. Roof observed that defendant demonstrated "fair insight and judgment" throughout the evaluation and his thought process was "logical and linear." Dr. Roof did not conduct an IQ test, but he observed that defendant's "level of intelligence appeared lower than average."

Defendant scored above the passing range on a test of mental competence. And Dr. Roof reported that defendant "demonstrated an adequate knowledge of criminal proceedings." Defendant was able to "understand and describe the roles of key court participants" and he understood the charges against him. Defendant also was able to

2

respond to Dr. Roof's questions and apply his understanding of the law to his situation. Defendant did report seeing and hearing things " 'that are not normal.' " After further inquiry and testing, however, Dr. Roof concluded it was unlikely defendant was actually experiencing hallucinations. It was more likely defendant was malingering.

Based on his observations and findings, Dr. Roof concluded defendant did not meet the criteria for an active psychiatric disorder. Dr. Roof also concluded defendant had an "adequate capacity to stand trial[,] . . . understand the nature of the criminal proceedings, [and] an adequate ability to assist his counsel with his defense."

Dr. Roof's report was filed with the trial court on June 20, 2016. The parties submitted on the report without objection. Based on Dr. Roof's report, the trial court found defendant competent to stand trial and reinstated criminal proceedings. Ultimately, a jury found defendant guilty of kidnapping with the intent to commit rape and/or sexual penetration (Pen. Code, § 209, subd. (b)(1)),[1] two counts of forcible sexual penetration (§ 289, subd. (a)(1)), attempted rape (§§ 664/261, subd. (a)(2)), lewd acts on a child (§ 288, subd. (c)(1)), and battery (§ 242). (*Garcia I, supra*, C089036.)

B.     *Sentencing*

Prior to sentencing, defendant was referred to Dr. Eugene Roeder for a psychological evaluation to determine whether defendant had a "mental disorder" that may have impacted his "interpretation" of the criminal conduct underlying his convictions. On June 20, 2018, Dr. Roeder issued his report. Defense counsel attached Dr. Roeder's report to their statement in mitigation.

In his report, Dr. Roeder noted that evaluating defendant was difficult because defendant was evasive and gave insufficiently detailed responses to questions. Dr. Roeder also noted that during the evaluation, it appeared defendant's ability to

---

[1] Further undesignated statutory references are to the Penal Code.

concentrate and attend to the conversation was "impaired." Dr. Roeder reported that defendant appeared to be of "below average intelligence" and his score on intelligence testing "suggested a mild intellectual disability."

Defendant told Dr. Roeder he stopped going to school after eleventh grade but did not explain why. When discussing his case, defendant told Dr. Roeder he was surprised when he was arrested. He also said that after talking to his counsel, he thought there were five cases pending against him. Defendant said there were no plea discussions with his counsel and explained that he only attends court " 'when they take [him].' " Defendant expressed confusion about why he was in jail and when asked about medication, he said, " 'They have been barely giving me a pill.' "

After evaluating defendant, Dr. Roeder opined defendant was likely sane when he committed the offenses for which he was convicted; however, defendant "is clearly an individual who suffers from a severe mental disorder that could and would affect his interpretation of events." Defendant's substance abuse "exasperate[d] his symptoms, and caused him to be even more disturbed." Dr. Roeder concluded that defendant's "mental illness" is "chronic and severe, and as a result he is likely to experience ongoing challenges for the foreseeable future."

At sentencing, the trial court considered defendant's statement in mitigation, including Dr. Roeder's report. The trial court then sentenced defendant to a one-strike term of 25 years to life for forcible sexual penetration, a four-year term for attempted forcible rape, and an eight-month term for lewd acts on a child. (*Garcia I, supra*, C089036.)

C.    *Resentencing*

Defendant appealed from the judgment. On appeal, this court reversed defendant's conviction for lewd acts on a child, vacated the sentence imposed under the One Strike law, and remanded the matter for resentencing. (*Garcia I, supra*, C089036.)

4

On remand, the resentencing court resentenced defendant to a term of 15 years to life, plus three years.[2]

At the resentencing hearing, defendant appeared via Zoom, and his attorney was physically present in the courtroom. After reminding defendant to take himself off mute, the following exchange took place between defendant, the court, and counsel: "The record shall reflect that the Court has reviewed the remittitur in this matter[,] the previous probation report[,] and previous judgment and sentence. And the remittitur is filed as part of the record in this case.

"[THE COURT]: [H]ave you received a copy of the remittitur and have you had an adequate time to . . . review [it] with [defendant]?

"[DEFENSE COUNSEL]: I do not know if [defendant] has gotten any of my letters because he's at California state prison Los Angeles, and he is—they have four facilities. I don't know what facility he's in. I [d]id send a letter to each one of the facilities.

"Did you get a letter from me, [defendant]?

"And did you also get a copy of my sentencing memorandum that I dated January 12? Looks like this.

"THE COURT: Holding a letter.

"[DEFENSE COUNSEL]: Can you speak?

"THE COURT: [Defendant], is that a letter you received from [defense counsel]?

"THE DEFENDANT: This is one. I have one. I have three more. This is one here.

"[DEFENSE COUNSEL]: I'm guessing he got all four.

---

[2] The court stayed a term of seven years to life on defendant's conviction for kidnapping with the intent to rape as well as a term of 15 years to life on defendant's second conviction for forcible sexual penetration.

"THE COURT: Do they contain a sentencing memo?

"[DEFENSE COUNSEL]: I sent –

"THE COURT: Did you receive a sentencing memo like this, [defendant], from your attorney?

"THE DEFENDANT: I'm having problems with the image. I can't see you guys. I can hear you a little bit. Something wrong with the video.

"THE COURT: Somebody will assist you with that.

"THE DEFENDANT: Yeah, give me a second.

"THE COURT: Are you ready?

"THE DEFENDANT: Yeah.

"THE COURT: Okay. I'm going to start."

The resentencing court confirmed defense counsel reviewed the decision on appeal as well as the sentencing transcript and probation report, then asked whether counsel had sufficient opportunity to discuss the issues with defendant. Counsel indicated he sent defendant both his analysis of the remittitur and a sentencing memo. Defendant then raised his hand to speak: "Yeah. I received a letter. A lot of these papers legal paperwork something about a lot of things, a lot of whatever—say whatever they talking about, all the time serving I've been here eight years. I was in County. Came back to prison for eight years. What I was asking about with the lawyer I had before, a lot of these things I never—false statements. Trying to explain to her, I had all these counts. A lot of all these counts, these statements before are different. It was something different.

"This is my—I have a lot to talk about that. What I'm saying everything that they have against me what they're saying I did, what I did for my case, my crimes, all these whatever they say all that, this is what they say. What I'm saying is a lot is false.

"I got the letter from him, legal paperwork with my all my info, everything with the same address, name everything. I have the letter. There is the—what is it? Yeah. Letter right here. Resentencing today, right?

6

"THE COURT: Yes.

"THE DEFENDANT: Yeah. At this time?

"THE COURT: Yes.

"THE DEFENDANT: This is the last one I have.

"THE COURT: Okay.

"THE DEFENDANT: This is what—what is happening today?

"THE COURT: Yes.

"THE DEFENDANT: Okay. What is happening now?

"THE COURT: We're going to do the resentencing based on the Court of Appeal sending back your case saying we need to resentence differently.

"THE DEFENDANT: Anything I can do to help me? Something that I'm not comfortable with, something I'm not agreeing with.

"THE COURT: Hold on. [Defense counsel] sent a copy of his resentencing memo. Did you get a copy of this?

"THE DEFENDANT: This is one I'm showing. That's the one I have.

"[DEFENSE COUNSEL]: Does it have my name—no. That's a letter.

"Do you have a document that has –

"THE DEFENDANT: I have a letter.

"[DEFENSE COUNSEL]: Sir –

"THE COURT: [Defendant], let your attorney talk to you. Just be quiet for [a] second. He'll talk to you.

"[DEFENSE COUNSEL]: Do you have the document that is maybe about an eighth of an inch thick, has an attachment, has my name and address at top left-hand corner. It says defendant sentencing memorandum. Do you have that?

"THE DEFENDANT: Yeah. Sacramento, in envelope. I have it in the cell. In the cell I have it.

"THE COURT: Did you read it?

7

"THE DEFENDANT: Yeah. Read that. Yeah. I have in there.

"THE COURT: Okay. That's your attorney's argument for you with regard to resentence.

"THE DEFENDANT: What do you want to do now?

"THE COURT: I'm going to resentence you. Okay. I'm going to resentence you based on the law which I think you're going to have a difficult time understanding, but I'm going to try to do it in a way that makes you understand what we're doing here today. Okay.

"THE DEFENDANT: Yeah. Okay. Okay. Yeah, I got his letter.

"THE COURT: You have his legal document that he sent you in your cell.

"THE DEFENDANT: I need a lawyer. Is he Joseph? Yeah. I have it.

"[DEFENSE COUNSEL]: That's me.

"THE DEFENDANT: Yeah.

"THE COURT: Okay.

"[DEFENSE COUNSEL]: I think I can do this right now. [Defendant,] what's going to happen is you were sentenced to 25 years to life. That I believe is going to go away. You were also sentenced to life on the kidnap case. That can't change, but I do believe the 25 years to life is no longer going to be imposed on you. You're going to get a substantial reduction in the sentence that you were given previously. That's what this resentencing is going to do in my opinion.

"Did you hear that?

"THE DEFENDANT: What's going to happen?

"[DEFENSE COUNSEL]: The judge is going to resentence you, and you're going to be sentenced to a lot less time than you got before.

"THE DEFENDANT: Okay.

"[DEFENSE COUNSEL]: That's what today is for.

"THE DEFENDANT: Oh –

8

"[DEFENSE COUNSEL]:  At the direction of the Court of Appeal.  We are not retrying your case.  Your case was affirmed on appeal.  The Court of Appeal simply said you have to be resentenced to less time.  That's what today is all about.  Okay?

"THE DEFENDANT:  That's good.

"THE COURT:  You're going to listen right now.  Okay.

"THE DEFENDANT:  Okay."

Counsel for both parties submitted and the resentencing court asked defendant if he wanted to be heard:

"THE DEFENDANT:  You asked me?

"THE COURT:  Yeah.  We've heard from you.  Just going to impose the new sentence.  I just wanted to know if there's anything else you want to say about the sentence, not necessarily about the trial.

"THE DEFENDANT:   I'm getting something else, more paper with a notice?

"THE COURT:  You will get something once we're done here.

"THE DEFENDANT:  About this charge today, right?

"THE COURT:  Yes.

"THE DEFENDANT:  I don't [know] what else is going on for today.

"THE COURT:  Okay.

"Okay.  I'll go forward with sentencing.  You will get a notice of what we did today, and you can take a look at it and talk to [defense counsel] about it, and then you'll have a better understanding of what we're doing.

"I'll try to explain as I go.  Okay?

"THE DEFENDANT:  Okay.  Okay."

The resentencing court then resentenced defendant to an aggregate term of 15 years to life plus three years.  The court awarded defendant custody credits, imposed various fines and fees, and advised defendant of his right to appeal.  When asked if he

understood his right to appeal, defendant responded, "I got it." The court also asked defendant if he understood his parole rights:

"[THE COURT:] Do you understand what I said about your parole rights?

"THE DEFENDANT: Write it down. I can't think. Put on the paper. Can I read them. I can remember."

The court then advised defendant about his parole rights a second time.

Defendant appeals from his resentencing.

## II. DISCUSSION

### A. *Issues Not Cognizable on Appeal*

As an initial matter, we find three of defendant's four appellate contentions to be beyond the scope of this appeal.

First, absent good cause or justification, a defendant may not raise an issue in a second appeal that could have been raised in the first appeal. (See *People v. Senior* (1995) 33 Cal.App.4th 531, 538 ["where a criminal defendant could have raised an issue in a prior appeal, the appellate court need not entertain the issue in a subsequent appeal absent a showing of justification for the delay"].) An issue not raised in a prior appeal is waived in a subsequent appeal where "(1) the issue was ripe for decision by the appellate court at the time of the previous appeal; (2) there has been no significant change in the underlying facts or applicable law; and (3) the defendant has offered no reasonable justification for the delay." (*Ibid*.)

Here, defendant contends the trial court erred in finding him competent to stand trial without further inquiry. Defendant could have raised this claim in his prior appeal but did not. (See *People v. Fields* (1965) 62 Cal.2d 538, 541-542 [determination of competence may be reviewed on appeal from a judgment of conviction]; see also *Garcia I, supra*, C089036.) Defendant claims he had strong justification for not raising the issue in his prior appeal because "the grounds for appealing the issue of his *pretrial* competency arguably did not become overly apparent *until resentencing*." However, he

10

relies primarily on the same two doctors' reports the trial court considered when it found defendant competent before trial. The only "new" information he offers is his conduct at resentencing, which, on this record, does not justify the delay.

Defendant also claims trial counsel was ineffective for failing to challenge the trial court's competency finding before trial. Again, defendant could have asserted this claim in *Garcia I* but did not. He offers no justification for failing to do so.

In addition, defendant argues that prior appellate counsel was ineffective for failing to challenge the trial court's competency finding in *Garcia I.* Any claim that prior appellate counsel was ineffective must be raised in a postappeal habeas corpus petition. (See *In re Hampton* (2020) 48 Cal.App.5th 463, 474.) Accordingly, this claim also is not cognizable on this appeal.

Finally, acknowledging these claims may be beyond the scope of this appeal, defendant invites this court to exercise its inherent discretion to nevertheless consider these claims. We decline his invitation.

B.      *Competency at Resentencing*

Defendant also argues the resentencing court erred by not conducting a second competency evaluation on remand, prior to resentencing. He claims that his conduct at the resentencing hearing, along with the prior two doctors' reports, triggered the resentencing court's obligation to evaluate his competency. We disagree.

" 'Penal Code section 1368 requires that criminal proceedings be suspended and competency proceedings be commenced if "a doubt arises in the mind of the judge" regarding the defendant's competence (*id*., subd. (a)) and defense counsel concurs (*id*., subd. (b)).' " (*People v. Wycoff* (2021) 12 Cal.5th 58, 82.)

However, "the duty to suspend is not triggered by information that substantially duplicates evidence already considered at an earlier, formal inquiry into the defendant's competence, and that when faced with evidence of relatively minor changes in the defendant's mental state, the court may rely on a prior competency finding rather than

11

convening a new hearing to cover largely the same ground." (*In re Sims* (2021) 67 Cal.App.5th 762, 783.) "[W]hen a defendant has already been found competent to stand trial, ' "a trial court need not suspend proceedings to conduct a second competency hearing unless it 'is presented with a substantial change of circumstances or with new evidence' casting a serious doubt on the validity of that finding." ' " (*Ibid*.)

Further, "once a defendant has been found to be competent, even bizarre statements and actions are not enough to require a further inquiry." (*People v. Marks* (2003) 31 Cal.4th 197, 220.) Nor is an appellate court in a position " ' " 'to appraise a defendant's conduct in the trial court as indicating insanity, a calculated attempt to feign insanity and delay the proceedings, or sheer temper.' " ' " (*Ibid*.) Accordingly, "[r]eviewing courts give great deference to a trial court's decision whether to hold a competency hearing." (*Ibid*.)

On remand, defendant appeared via Zoom, which created some initial confusion related to technical difficulties. Defendant also expressed some confusion about why he was in court. The court and counsel walked defendant through the reason he was there and made sure he had received and reviewed the documents counsel sent him. On this record, it appears defendant came to understand what was happening, and he understood it was good news because his sentence was being reduced.

Contrary to defendant's claim on appeal, whatever confusion he exhibited at resentencing appears to be no more than any lay person would exhibit given the complicated process of appeal, remittitur, and resentencing. Moreover, it may be that defendant struggled to hear the resentencing court and counsel because he was on Zoom and not in the room. On appeal, we do not have the benefit of knowing exactly how well the remote connection was working, nor do we have the benefit of witnessing defendant's demeanor or hearing him speak.

In short, we cannot assess whether defendant was actually confused, the extent of his confusion, or how much of that confusion was the result of delays and/or glitches in

the Zoom technology.  The resentence court was better positioned to make those assessments.  Accordingly, we give deference to their decision, and find no error.

### III.  DISPOSITION

The judgment is affirmed.


/S/

_____
RENNER, J.


We concur:


/S/

_____
EARL, P. J.


/S/

_____
ROBIE, J.